UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DEBORAH TURNER, | ) |
| | ) Case No. 4:04CV-01688 (SNL) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SOUTHWESTERN BELL TELEPHONE, L.P. | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's Motion for Summary Judgment (hereinafter "the Motion"). In opposition to said Motion, Plaintiff states as follows:

### I. OVERVIEW

Defendant's motion for summary judgment should be denied because (1) under relevant law, Plaintiff Deborah Turner has cured her inadvertent and innocent omission of her claims from her bankruptcy by re-opening her bankruptcy case and disclosing her claims against Defendant, (2) the standing issue has been cured as Ms. Turner and Fredrich J. Cruse, trustee over Ms. Turner's bankruptcy, have jointly filed a motion to substitute Mr. Cruse as party plaintiff herein, and (3) application of judicial estoppel is unwarranted as Defendant presents no evidence of knowing misrepresentation or fraud upon the Court. Alternatively, summary judgment is unwarranted as sufficient evidence is presented herein to create genuine issues of material fact concerning such matters.

### II. STATEMENT OF FACTS

Ms. Turner brought claims against Defendant for unlawful retaliation in violation of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. Sec. 12101 et seq., and the Missouri Human Rights Act (hereinafter "MHRA"), R.S.Mo. Ch. 213. First Amended

1

Complaint.  Specifically, she alleged Defendant terminated her employment in retaliation for her refusal to waive and release her then-pending disability discrimination claims.  Id.

On October 20, 2004, Ms. Turner filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of Missouri.  See declaration of Ms. Turner attached hereto as "Exhibit 1," para. 2.  Attorney Alan Teitelbaum represented Ms. Turner in her bankruptcy and the undersigned had no knowledge of such bankruptcy whatsoever.  Ex. 1, paras. 2 - 4; see declaration of Ms. Turner's counsel attached hereto as "Exhibit 2," para. 2.

Prior to filing bankruptcy, Ms. Turner disclosed to Mr. Teitelbaum that she was pursuing a discrimination charge against Defendant.  Ex. 1, para. 5.  Mr. Teitelbaum's office prepared Ms. Turner's bankruptcy schedules and her statement of financial affairs.  Ex. 1, para. 6.  However, none of these documents, produced for Ms. Turner by Mr. Teitelbaum's office, disclosed the discrimination charge against Defendant.  Ex. 1, para. 7.  Such omission was innocent, unknowing and inadvertent on Ms. Turner's part as she was unfamiliar with both legal terminology and requirements of bankruptcy law.  Ex. 1, para. 8.  The highest level of education completed by Ms. Turner is high school and she has received no instruction or training in law. Ex. 1, para. 10. Prior to her bankruptcy, Ms. Turner had never even been a party to a court proceeding.  Ex. 1, para. 11.  Ms. Turner trusted Mr. Teitelbaum, as her bankruptcy attorney, to give her accurate legal advice and to complete her bankruptcy filings fully, accurately and in compliance with legal requirements.  Ex. 1, para. 9.

Ms. Turner gladly would have disclosed her claims against Defendant in her original schedules and statements had she received adequate legal advice from Mr. Teitelbaum or had she been aware of her duty to disclose such claims.  Ex. 1, para. 12.  Moreover, had the undersigned been aware of Ms. Turner's bankruptcy claim, he would have advised Ms. Turner to disclose her

claims against Defendant in her bankruptcy schedules and statements of financial affairs.  Ex. 2, para. 3.

At the time Ms. Turner filed bankruptcy, her prerequisite administrative charges were pending before the U.S. Equal Employment Opportunity Commission (hereinafter "the EEOC") and the Missouri Commission on Human Rights (hereinafter "the MCHR").  No suit had yet been filed.  The MCHR and EEOC issued Ms. Turner notices of right to sue on November 17, 2004 and December 1, 2004, respectively.  See Exhibits 1 & 2 to First Amended Complaint.  Ms. Turner thereafter filed this suit in a timely manner.

Mr. Teitelbaum did not appear with Ms. Turner at her meeting of creditors on November 24, 2004.  Ex. 1, para. 13.  Instead, a man Ms. Turner had never before met, and whose name she did not get, appeared as Ms. Turner's counsel at that meeting.  Id.  Ms. Turner has not met with the man who appeared at the meeting of creditors since November 24, 2004.  Id.

At the meeting of creditors, Fredrich J. Cruse, the duly appointed trustee in Ms. Turner's bankruptcy case (hereinafter "the Trustee"), examined her.  Ex. 1, para. 14.  At no point during that examination did the Trustee inquire whether Ms. Turner had any actions that she could take to court or sue upon nor whether she had any property other than as listed on her schedules and statements.  See declaration of Bonnie Clair attached hereto as "Exhibit 3," para. 2.

While the Trustee did inquire whether the "documents filed with the Court" by Ms. Turner were "a complete and accurate representation of [her] financial affairs," Ms. Turner, being unsophisticated in legal terminology and bankruptcy law, understood this question to be an inquiry about her income and expenses, not her assets and liabilities.  Ex. 1, para. 14.  Further, Ms. Turner did not realize that the trustee might be referring to legal claims or that such claims should have been listed in her bankruptcy schedules.  Ex. 1, para. 14.

3

At the conclusion of the meeting of creditors, the Trustee continued that meeting to December 29, 2004 pending amendment of Ms. Turner's Schedule B, which lists personal property, to add clothing and jewelry.  While that amendment of Ms. Turner's Schedule B was prepared by Mr. Teitelbaum's office, that office did not ask Ms. Turner whether she had any other changes to her Schedule B.  Ex. 1, para. 15.  Ms. Turner did not receive any advice from Mr. Teitelbaum or his office regarding her amended Schedule B other than instructions about where to sign that document.  Ex. 1, para. 15.

On December 29, 2004 the Trustee concluded the meeting of creditors without the Ms. Turner's further appearance.  On February 4, 2005, the bankruptcy court entered the Final Decree in that the Chapter 7 case, and thereafter closed the bankruptcy case.

On March 28, 2005, Defendant filed the Motion before this Court seeking judgment on the basis that Ms. Turner failed to list her claims against Defendant on her bankruptcy schedules.  That was the first time that the undersigned had any notice of Ms. Turner's bankruptcy.

Ms. Turner then realized her inadvertent and unknowing omission.  Ex. 1, para. 16.  Therefore, she promptly obtained replacement counsel to re-open her bankruptcy case and to disclose the claims pending before this Court within her bankruptcy schedules.  Ex. 1, para. 17.  Ms. Turner did so fully aware that any Trustee of her bankruptcy estate would acquire the right to pursue her claims against Defendant.  Ex. 1, para. 18.

On May 3, 2005, Ms. Turner's new bankruptcy counsel moved to re-open the bankruptcy case "in order to amend her bankruptcy schedules and her statement of financial affairs to reflect the discrimination charge against SBC, which now is a filed lawsuit, as well as other items that Mr. Teitelbaum's office failed to schedule."  Ex. 3, paras. 1, 2, 4 & 5; see Debtor's Motion to Reopen Case attached hereto as "Exhibit 4," para. 16.

4

Two days later, on May 5, 2005, the bankruptcy court granted Ms. Turner's motion to re-open her case and ordered that a trustee be appointed to administer the bankruptcy estate. Ex. 3, para. 6; see bankruptcy court's Order dated May 5, 2005 on the Motion to Reopen Case dated which re-opened the bankruptcy case attached hereto as "Exhibit 5." As per the

Ms. Turner's new bankruptcy attorney filed an amended Schedule B and an amended Statement of Financial Affairs in Ms. Turner's bankruptcy case, each listing her retaliation claims against Defendant. Ex. 3, paras. 7 & 8; see amended bankruptcy Schedule B and amended Statement of Financial Affairs attached hereto as "Exhibit 6."

On May 20, 2005, the bankruptcy court re-appointed Fredrick J. Cruse as trustee in Ms. Turner's bankruptcy case. See docket sheet attached hereto as "Exhibit 7."

As a result, simultaneously herewith, Plaintiff and the Trustee file their joint motion to substitute the Trustee as plaintiff herein.[1]

### III.    ARGUMENT

#### A.    STANDARD FOR DETERMINATION

Pursuant to Fed. R. Civ. P. 56(c), summary judgment only is appropriate when the movant fulfills its burden of showing that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. vs. Catrett, 477 U.S. 317, 322 (1986). "[O]n a motion for summary judgment, the plaintiff need not prove his case by a preponderance of the evidence, but merely need prove that a genuine issue exists as to one or more material facts." Oldham vs. West, 47 F.3d 985, 988-989 (8th Cir. 1995). The evidence of the non-moving party must be accepted as true and all reasonable inferences which may be drawn from the facts must be

---

[1] All statements of fact and argument contained in the motion to substitute expressly are incorporated herein by reference.

resolved in favor or the non-moving party. Booth vs. Hvass, 302 F.3d 849, 851 (8th Cir. 2002). Issues of credibility may not be examined in ruling on summary judgment. Oldham, 47 F.3d at 988-989. It is particularly inappropriate in employment cases to shift the ultimate burden of proof from the summary judgment movant to the respondent. Id. In sum, summary judgment is an extreme remedy which is not appropriate unless it is clear that the plaintiff "is not entitled to recover under any discernible circumstances." Keys vs. Lutheran Family Serv., 668 F.2d 356, 357-58 (8th Cir. 1981). A court may not accept the employer's version of the facts over the employee's version. Oldham, supra.

### B. THE STANDING ISSUE HAS BEEN CURED

Defendant argues that summary judgment should be granted because only the Trustee has standing as the real party in interest. However, federal courts, including this one, recognize that standing may be cured by the substitution of the bankruptcy trustee for Ms. Turner. See Motion of Plaintiff Deborah Turner and Trustee Fredrick J. Cruse to Substitute Plaintiff filed contemporaneously herewith. Alternatively, sufficient probative evidence has been presented herein to create a genuine issue of material fact regarding cure and to overcome summary judgment. See e.g., Taylor vs. Comcast Cablevision, 252 F.Supp.2d 793 (E.D.AR 2003); Richardson vs. UPS, 195 B.R. 737 (E.D.MO 1996); Asmus vs. Capital Region Family Practice, 115 S.W.3d 427 (Mo.App. 2003); Walker Mfg., Inc. vs. Hoffmann, Inc., 220 F.Supp.2d 1024, 1032 (N.D.IO 2002)("party in interest, we note, can be cured under Federal Rule of Civil Procedure 17(a)").

Rule 17(a) of the Federal Rules of Civil Procedure provides:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. **No action shall be**

6

**dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest**.

See Fed. R. Civ. P. 17(a). (emphasis added). The provision of Rule 17(a) providing reasonable time for ratification, joinder, or substitution prior to dismissal for lack of real party in interest was added to prevent forfeiture when determination of proper party to sue is difficult or when understandable mistake has been made. Wadsworth vs. U.S.P.S., 511 F.2d 64, 66 (7th Cir. 1975).

The case of Taylor vs. Comcast Cablevision, 252 F.Supp.2d 793 (E.D.AR 2003), squares with the matter at bar in all material respects. Mr. Taylor, like Ms. Turner, filed claims under the ADA which previously were not disclosed in his bankruptcy schedules. See 252 F.Supp.2d at 794-795. Also, like Ms. Turner, Mr. Taylor filed a petition for Chapter 7 bankruptcy while the prerequisite administrative charge was pending. Id. Like Ms. Turner, Mr. Taylor was represented in bankruptcy by an attorney other than the one representing him in his ADA claim. Id. About sixteen months after filing his ADA suit, the bankruptcy court re-opened the bankruptcy case and Mr. Taylor then disclosed his ADA claim. As here, Mr. Taylor's bankruptcy trustee would have been barred by limitations had he attempted to file another suit on the claims[2]. See id., at 795.

The Taylor court first recognized:

---

[2] There is no limitation bar upon substitution of the bankruptcy trustee as plaintiff herein because that amendment will "relate back" to the date of the original complaint. Fed. R. Civ. P. 15(c)(2); Hayes vs. Faulkner County, 388 F.3d 669, 675-76 (8th Cir. 2004); Taylor, 252 F.Supp.2d at 795-797 (substitution of bankruptcy trustee for injured party as party plaintiff). This "relation back" rule applies when the claim asserted in the amended pleading arises out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, even if the statute of limitations has run in the interim. Id.; Mann vs. Duk Mfg. Co., 166 F.R.D. 415, 417 (E.D.MO 1996).

> Rule 17(a) provides that 'no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.' Most courts have interpreted this sentence 'as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult.'

Id., 252 F.Supp.2d at 795 (quoting Wieburg vs. GTE Southwest, Inc., 272 F.3d 302, 308 (5th Cir. 2001)). Then, the Taylor court concluded:

> [T]he Court is persuaded that plaintiff's failure to list the EEOC Charge was an understandable mistake. Dismissal of the action would be unjust as plaintiff's cause of action would be barred by the statute of limitations. As the bankruptcy estate has been reopened, the Trustee can be joined and substituted as party to this action pursuant to Rule 17(a) if necessary. Thus, the Court finds that the complaint should not be dismissed for lack of standing.

Id., 252 F.Supp.2d at 795-796. The Taylor court expressly relied on the fact that Mr. Taylor, like Ms. Turner, had a high school education, had very little knowledge of the legal system, had relied on a bankruptcy attorney to complete his bankruptcy filings, and did not receive legal advice to disclose his pending EEOC charge. See id., at 796. The Taylor court squarely rejected the defendant's argument that the timing of events constituted sufficient evidence of wrongful motive by Mr. Taylor. See id., at 797.

In Richardson vs. UPS, 195 B.R. 737 (E.D.MO 1996), decided by this Court, the defendant moved to dismiss an employment discrimination suit based on lack of standing. Mr. Richardson, like Ms. Turner, had failed to list such claim in his bankruptcy schedules. See 195 B.R. at 738. He argued that the case should not be dismissed, but rather should be stayed so that he could amend his bankruptcy filings to list his employment discrimination suit and to name the bankruptcy trustee as a party. Id. This Court, recognizing the interests of the bankruptcy creditors, denied the defendants' motion to dismiss for lack of standing. See id., at 740.

Asmus vs. Capital Region Family Practice, 115 S.W.3d 427 (Mo.App. 2003) is also similar. There, Mr. Asmus filed a Chapter 7 bankruptcy petition, but did not disclose that he had

8

a medical malpractice claim he intended to pursue.  See 115 S.W.3d at 429.  As here, Mr. Asmus' bankruptcy attorney did not advise him to list such claim on his schedules.  See id., at 432.  The attorneys representing Mr. Asmus in his bankruptcy did not list that claim.  See id., at 430.  The defendants moved to dismiss, contending that Mr. Asmus lacked standing to bring his claim as the cause of action belonged to the bankruptcy trustee.  Id.  Shortly after the motions to dismiss were filed, Mr. Asmus moved to re-open his bankruptcy case in order to amend the schedules to include his medical malpractice claim and moved to amend the medical malpractice petition to add the bankruptcy trustee as a plaintiff.  Id.  Based on these efforts, the bankruptcy estate was re-opened and Mr. Asmus' schedules were amended to include the medical malpractice claim.  Id.  Then, the court adjudicating the medical malpractice granted the motion to dismiss.  However, the appellate court, in a well-reasoned opinion, reversed the dismissal.  Id., at 430-437.  The Asmus appellate court succinctly stated its ruling:

> Prior to ruling on the motions to dismiss, the [trial] court had before it Plaintiff's motion to amend his pleading to add the bankruptcy trustee as a plaintiff.  This, according to plaintiff, should have entered into the court's consideration with regard to the motion to dismiss.  We agree.  Although plaintiff was not the proper party to bring the lawsuit in his own name, his motion to add the bankruptcy trustee would have cured the deficiency in his pleading.

See id., at 432.

Here, omission of Ms. Turner's claims from the bankruptcy may be cured under Federal Rule of Civil Procedure 17(a) and precedents such as Taylor, Richardson, and Asmus.  Ms. Turner, only through inadvertence and innocent error, omitted this action from her bankruptcy schedules.  She did disclose the claim to her initial bankruptcy counsel who prepared her bankruptcy filings.  However, she relied on his expertise in believing the schedules were accurate and complete.  Unfortunately, Ms. Turner's earlier bankruptcy counsel erroneously failed to include her claims against Defendant in those papers.  Ms. Turner was unfamiliar with legal terminology and the requirements of bankruptcy law.  This is understandable as her highest level

9

of education completed is high school, she has received no legal education or training, and she had never been a party to a court proceeding prior to filing bankruptcy. For some reason, the bankruptcy trustee did not question Ms. Turner regarding actions that she could take to court or sue upon nor whether Ms. Turner had any property other than as listed on her schedules and statements.

Upon learning of the omission, Ms. Turner showed good faith by obtaining new bankruptcy counsel, having her bankruptcy case re-opened, and disclosing her claims against Defendant in her bankruptcy schedules.[3] Ms. Turner did so fully aware that the Trustee of her bankruptcy estate would acquire the right to pursue her claims against Defendant.[4] Defendant's unsupported speculation and conjecture about Ms. Turner's improper motive based on timing alone should be rejected, as in Taylor, supra. See Taylor, 252 F.Supp.2d at 798-799. Also, the Eighth Circuit repeatedly has held that timing alone is insufficient evidence of wrongful motive. See, e.g., Griffith vs. City of Des Moines, 387 F.3d 733, 738 (8th Cir. 2004); Kiel vs. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). Therefore, pursuant to the above-cited authorities, Ms. Turner has cured any issue of the proper party in interest and the motion to dismiss should be denied.

Alternatively, Ms. Turner has come forth with sufficient probative evidence to overcome summary judgment.

---

[3] Similarly, in Taylor and Asmus, in which standing issues were found cured, the respective plaintiffs took corrective action after dispositive motions were filed. Taylor, 252 F.Supp.2d at 797; Asmus, 115 S.W.3d at 430. In Richardson, the omission was found to be curable although it appears that Mr. Richardson only represented to the court that he would take remedial action in the future. Richardson, 195 B.R. at 738.

[4] See Estate of Jones vs. Planters Grain & Seed Co., 723 S.W.2d 91, 92 (Mo.App. 1987), in which the court observed, "It seems to us that a bankrupt person and his trustee are both interested in recovering all possible assets of the bankrupt for the benefit of his creditors since, although title to the bankrupt's assets passes to the trustee, the disposition of those assets is for the benefit of the bankrupt and his creditors."

Defendant relies solely on Harris vs. St. Louis Univ., 114 B.R. 647 (E.D.MO 1990). However, that case is easily distinguished.  Simply, in Harris, there was no cure, nor even any attempt to cure, the omission of the claims from the bankruptcy filing nor any attempt to substitute or add the bankruptcy trustee as a plaintiff.  Id.  The decision in Taylor highlights this distinction by expressly distinguishing Mr. Taylor's case, in which he made efforts to cure, from Burnes vs. Pemco Aeroplex, Inc., 291 F.3d 1282, 1287 (11th Cir. 2002), in which the plaintiff did not amend his bankruptcy schedules to include his employment discrimination suit.  See Taylor, 252 F.Supp.2d at 797.  On this basis, the Taylor court denied the defendant's motion to dismiss.  Id.  Therefore, because the matter at bar factually is distinguishable from Harris, summary judgment should be denied.

As enunciated in Taylor, Richardson and Asmus, a plaintiff's knowledge of existence of his or her claims prior to filing bankruptcy is not dispositive, but knowing misconduct and curative efforts determine the outcome.  Id.  Ms. Turner did not engage in knowing misconduct and she made prompt and diligent efforts to cure.  Defendant cannot show otherwise, nor has it attempted to do so.

> **C.    NO EVIDENCE OF KNOWING MISREPRESEN-
> TATION OR FRAUD EXISTS WHICH WARRANTS
> THE INVOCATION OF JUDICIAL ESTOPPEL**

The Eighth Circuit has stated that the judicial estoppel is inappropriate unless the judicial form or process has been abused, and has expressed reluctance to apply judicial estoppel in the absence of a knowing misrepresentation or fraud on the court.  Total Petroleum, Inc. vs. Davis, 822 F.2d 734, 738 n.6 (8th Cir. 1987); EEOC vs. Apria Healthcare Group [(hereinafter "Apria Healthcare")], 222 F.R.D. 608, 612 (E.D.MO 2004).  Indeed, the Taylor court recognized:

> Judicial estoppel is an 'extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.' It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant

11

at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to 'secure substantial equity.'

See 252 F.Supp.2d at 799 (quoting Ryan Operations G.P. vs. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3rd Cir. 1996)).

The Taylor opinion contains a cogent summary of authorities on application of judicial estoppel:

> An overly strict application of judicial estoppel has been criticized as providing a windfall to the alleged wrongdoer and possibly depriving creditors, who are not parties to the non-bankruptcy action, of a potential bankruptcy asset. See Brown at 216.
> Travelers' (the defendant in the state court proceeding) position is overly harsh and inequitable as well. Everyone, except Travelers, loses under its theory. If a debtor fails to include assets on his schedules and later seeks to add them, the Bankruptcy Rules allow it 'as a matter of course at any time before the case is closed.' Fed.R.Bankr.P. 1009(a). A bankruptcy court has ample powers to punish debtors who wrongfully conceal assets, i.e., sanctions under Fed.R.Bankr.P. 9011, conversion of the case to chapter 7 (Sec. 1307(c)), revocation of discharge (Sec. 1328(e)), referral for criminal charges (18 U.S.C. Secs. 152(1), (2), (3), (7)). Travelers position punishes the creditors of the nondisclosing debtor, not just the debtor. The better result is to allow the claim to be prosecuted and collected, order the funds paid toward claims filed in the case, and punish the debtor another way. In re Griner, 240 B.R. 432, 439 (Bkrtcy. S.D.AL 1999).
> Commentators have urged caution in applying the doctrine. 'Courts in which judicial estoppel is raised should be urged to consider the effect of dismissal upon creditors of the plaintiff and to analyze whether more appropriate remedies, other than dismissal of the litigation, are available in the bankruptcy court. Courts should not be too quick to deprive the bankruptcy court of its opportunity to decide whether reopening of a closed bankruptcy case would be beneficial to the bankruptcy estate and its creditors.' Brown, at 227. In a supplement to Judge Brown's article, one commentator stated: 'The better rule [than dismissal], and consistent with Rule 1009 of the Federal Rules of Bankruptcy Procedure, is that the debtor should be liberally allowed to amend the schedules. Further, the best interest of creditors should be a paramount consideration before dismissing the cause of action under the doctrine of judicial estoppel. The trustee should be substituted as the real-party-in-interest to protect the assets of the estate.' Thomas E. Ray, Judicial Estoppel in Chapters 7 and 13, 21 Am. Bankr. Inst.J. 14, 21 (2002).

Taylor, 252 F.Supp.2d at 798-799.

Moreover, in its analysis, the Taylor court found no evidence of deliberate manipulation or fraud on the court when Mr. Taylor, like Plaintiff, filed ADA claims not earlier disclosed on bankruptcy schedules, filed a petition for Chapter 7 bankruptcy while the prerequisite

12

administrative chare was pending, was represented in bankruptcy by an attorney other than the one representing him in his ADA claim, and made efforts to re-open the bankruptcy and disclose the ADA claim. Id., at 795.

Likewise, in the recent case of Apria Healthcare, this Court found no evidence of knowing misrepresentation or fraud in similar circumstances. 222 F.R.D. at 613. This Court expressly considered that the debtor had amended her bankruptcy schedules to include her employment discrimination suit and determined that failure to list a claim on bankruptcy schedules alone constitutes insufficient evidence of known misrepresentation or fraud on the court. Id.; see also Richardson, 195 B.R. at 739-40 (denying dismissal based on judicial estoppel and recognizing that the interest of creditors outweighed any other considerations present in the equation).

Judicial estoppel should not be invoked herein because there is no evidence of knowing misrepresentation or fraud on the court by her. She did not mean to deceive the court or anyone else, but rather was unfamiliar with legal terminology and the requirements of bankruptcy law. The highest level of education completed by Ms. Turner is high school and she has received no education or training in law. Prior to her bankruptcy, Ms. Turner had never even been a party to a law suit. She did inform her previously bankruptcy counsel of her claims against Defendant. However, he provided her errant legal advice and prepared incomplete bankruptcy forms to her, while she reasonably relied on his purported expertise. Ms. Turner would have listed her claims against Defendant had she realized that such disclosure was required. In sum, Ms. Turner's conduct was merely inadvertent and innocent. Defendant cannot show otherwise, by timing, unsupported speculation or conjecture regarding Ms. Turner's thoughts, or otherwise. See, e.g. Griffith, supra (Eighth Circuit holdings that timing alone does not establish wrongful motive); Kiel, supra (same). Alternatively, Ms. Turner has presented sufficient probative evidence herein

to create genuine issues of material fact regarding her knowledge and motive which preclude summary judgment. Therefore, judicial estoppel should not be applied and the motion for summary judgment should be denied.

U.S. ex. rel. Gebert vs. Transport Admin. Servs., 260 F.3d 909 (8th Cir. 2001), relied upon by Defendant, easily is distinguished. In Gebert, there was no effort to cure omission from the bankruptcy schedules after "several years." Id. Moreover, the plaintiffs in Gebert relied on technical arguments regarding ownership of a qui tam action, rather than relying on absence of knowing misrepresentation or fraud on the court. Id. The Gebert court did not even consider the issues of knowing misrepresentation or fraud on the court. Id. In Taylor, decided by a district court within the Eighth Circuit after Gebert, evidence of knowing misrepresentation and fraud on the court were considered and the motion to dismiss was denied. Significantly, the Taylor court was aware of Gebert as it expressly cited Gebert within its opinion. Taylor, 252 F.Supp.2d at 795.

Finally, Defendant's attempt to rely on case law from the Third and Fifth Circuits applying a stricter application of judicial estoppel based on possible motives must be rejected. The standard recently enunciated by this Court in Apria Healthcare and in Taylor, also decided within this circuit, must govern. Specifically, judicial estoppel is not invoked within the Eighth Circuit absence sufficient evidence of knowing misrepresentation or fraud on the court. Id. The standard applied in these district court decisions clearly follows Eight Circuit law set forth in such cases as Total Petroleum. Therein, the Eighth Circuit, in explaining application of judicial estoppel, held:

> "Judicial estoppel is also not appropriate because this is not a case in which the judicial forum or process has been abused. The purpose of judicial estoppel is to protect the integrity of the judicial process. As we read the caselaw, this is tantamount to a knowing misrepresentation to or even fraud on the court."

Id., 822 F.2d at 738 n.6.

14

Similarly, Jim Meagher Chevrolet, Inc. vs. General Motors Corp., 1994 U.S. Dist. Lexis 21628 (E.D.MO 1994) is also easily distinguished.  There, the plaintiff never disclosed the claims in the bankruptcy.  Id., at *3.  Moreover, Judge George Gunn, who decided Meagher Chevrolet, elected not to apply judicial estoppel two (2) years later in Richardson, based on the interests of the bankruptcy creditors.  Id., 195 B.R. at 739-740.

## IV.    CONCLUSION

Defendant's motion for summary judgment should be denied because (1) under relevant law, Ms. Turner has cured her inadvertent and innocent omission of her claims from her bankruptcy by re-opening her bankruptcy case and disclosing her claims against Defendant, and (2) application of judicial estoppel is unwarranted as Defendant presents no evidence of knowing misrepresentation or fraud upon the Court.  Alternatively, summary judgment is unwarranted as Ms. Turner has come forth with sufficient probative evidence to create genuine issues of material fact concerning such issues.

Respectfully submitted,

POTASHNICK LAW FIRM
          /s Mark Potashnick
Mark Potashnick, E.D.MO # 35970
111 Westport Plaza, Suite 600
St. Louis, Missouri  63146
Telephone: (314) 275-9150
Facsimile: (314) 275-9150

Attorney for Deborah Turner and
Trustee Fredrick J. Cruse

## CERTIFICATE OF SERVICE

The foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment was served on Defendant's attorneys of record, Rodney Harrison and Lynn Reid, Thompson Coburn LLP, One US Bank Plaza, St. Louis, Missouri, 63101, by electronic case filing on this 25th day of May, 2005.

          /s Mark Potashnick

15