UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH TURNER, as to Counts I and** | ) | |
| **II on behalf of herself and as to Counts** | ) | |
| **III and IV on behalf of a class comprised** | ) | |
| **of all employees and former employees of** | ) | |
| **defendant who have been required by** | ) | |
| **defendant to relinquish employment** | ) | |
| **rights,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 4:04CV1688-SNL** |
| | ) | |
| **SOUTHWESTERN BELL TELEPHONE** | ) | |
| **L.P. d/b/a SBC Missouri and Southwestern** | ) | |
| **Bell Telephone Company,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Defendants' motion for summary judgment based on plaintiffs' failure to disclose claim in bankruptcy filing is before the Court. Plaintiffs oppose the motion and defendants have replied. Plaintiffs have filed a sur-reply and defendants have filed notice of supplemental authority in support of the initial motion.

Plaintiff, Deborah Turner, was a former employee of defendant for over 22 years. She was discharged May 6, 2004.

Plaintiff, acting *pro se*, filed a charge of discrimination on May 17, 2004 with the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights (MCHR). In the charges, plaintiff asserted "The employer terminated my employment in retaliation for my protected activity including filing a prior administrative charge of disability

discrimination." Thereafter plaintiff retained counsel, Mark A. Potashnick, and the charges of

discrimination were amended July 26, 2004. The retaliation charges remained the same.

Various attempts were made between Potashnick and defendants' counsel to settle the

claim without success.

On November 17, 2004 MCHR issued plaintiffs a Right to Sue letter and the EEOC issued

a similar Right to Sue letter (issued on request) December 1, 2004. Obviously, the charges were

pending before the administrative bodies from the time of filing on May 17, 2004 until the

issuance of the Notice of Right to Sue on November 17, 2004.

On October 20, 2004 a short few weeks before receiving the Notice of Right to Sue,

plaintiff filed a voluntary petition under Chapter VII of the United States Bankruptcy Code.

Plaintiff's bankruptcy attorney was Alan D. Teitelbaum. In the summary of bankruptcy schedules,

plaintiff listed unsecured creditors in the sum of $24,455.00. In Schedule B of plaintiff's petition,

she listed that she had no "other contingent and unliquidated claims of every nature . . . ." In

paragraph 4 of the Statement of Financial Affairs of plaintiff in her schedules, plaintiff states that

she has no "suits and administrative proceedings to which the debtor is or was a party within one

year immediately preceding the filing of this bankruptcy case." There was no mention of the

pending claim against defendant before the EEOC or the MCHR listed in the bankruptcy

schedules.

Counsel Teitelbaum, on behalf of plaintiff, amended plaintiff's bankruptcy schedules on

December 6, 2004. The amended schedules added certain personal property, but still omitted

disclosure of the claims pending before the administrative agencies or the issuance of the Right to

Sue letter.

2

Also, on December 6, 2004, when the bankruptcy schedules were amended, the instant case was filed in this court by plaintiff's counsel, Potashnick.

The first meeting of creditors in the bankruptcy proceeding was held October 23, 2004 and the final meeting was held December 29, 2004.  The next day, December 30, 2004 the Trustee certified that this was a no-asset estate.  Accordingly, the plaintiff was discharged from the bankruptcy estate January 25, 2005.

In an affidavit, plaintiff stated that counsel Teitelbaum did not appear with her at her creditor's meetings, but apparently substituted a colleague to assist.  Plaintiff stated that in the dialogue between her and the bankruptcy trustee, she was not aware that she needed to discuss the claims that were earlier pending before the administrative agencies.  Plaintiff stated, also, "Before I filed bankruptcy, I told Mr. Teitelbaum that I was pursuing a discrimination charge against Southwestern Bell."  Plaintiff also stated that she did not reveal to counsel Potashnick  her Chapter VII bankruptcy filing.  Plaintiff also stated "I would have gladly disclosed my claims against Southwestern Bell in my original bankruptcy schedules if I had received adequate legal advice from Mr. Teitelbaum or if I had been aware of my duty to disclose such claims."

Plaintiff further stated that she first realized that an omission had occurred in her bank-ruptcy schedules when defendant filed the instant motion to dismiss on March 28, 2005.  She stated "The omission was completely innocent, inadvertent and unknowing on my part.  I did not mean to deceive the court or anyone else."

Counsel Mark A. Potashnick, in an affidavit, stated, "Prior to receiving Southwestern Bell's motion for summary judgment on March 28, 2005, I had no knowledge of plaintiff's bankruptcy case whatsoever."

Thereafter, plaintiff employed counsel Bonnie L. Clair to represent her further in the bankruptcy proceedings, and counsel Clair filed a motion to reopen the bankruptcy case May 3, 2005.

On May 5, 2005 the bankruptcy judge ordered that the bankruptcy estate of plaintiff be reopened and that a trustee be appointed.   New schedules were filed, listing again unsecured creditors in the sum of $24,455.00.  Personal property was listed in the sum of $9,738.69.  On schedule B, paragraph 20, the following description was listed: "Unliquidated discrimination charge against Southwestern Bell Telephone with EEOC and MCHR (potential value in excess of $100,000)."  The current market value was listed as unknown.

An additional claim was listed as follows: "Potential unliquidated legal malpractice claim against Alan Teitelbaum (Debtor disputes whether this suit was property of her estate as of the petition date or is property of her bankruptcy estate as of the date of this amendment, but lists it in an excess of caution)."  The value of this claim is also listed as unknown.

In Schedule C of the amended bankruptcy schedules, plaintiff lists her claim against defendant as well as the malpractice claim against Teitelbaum as exempt property.  The value of the claimed exemptions is listed as unknown.[1]

Counsel Bonnie Clair in an affidavit stated that she had reviewed the audio recording of the meeting of creditors in plaintiff's case, held November 24, 2004.  She stated that on review of

---

[1]      Although this observation is premature, it could be relevant as to plaintiff's motivation or intent.  Should plaintiff be successful in the claim against defendant or in the claim against the estate of her former attorney and receive an award of monetary damages, and if those proceeds are exempt from creditors, plaintiff will receive all of those proceeds and the unsecured creditors, nothing.  In such event, the bankruptcy judge will need to determine the exempt status, if at all, of plaintiff's claims.

4

the audio, "The recording reveals that Mr. Cruse (the bankruptcy trustee) did not inquire whether Ms. Turner had any actions that she could take to court or sue upon, nor whether she had any property other than as listed on her schedules and statements during any point during the examination."

There is also pending before this Court a motion of plaintiff and the U.S. Bankruptcy Trustee, Frederick J. Cruse, for leave to substitute bankruptcy trustee as the plaintiff here.  The request is opposed by defendants.

The parties have indicated to the Court that plaintiff's initial bankruptcy attorney, Teitelbaum, is deceased.  This is evidenced by the listing of an unliquidated legal malpractice claim against his estate on Schedule C of the property claimed as exempt in plaintiff's amended bankruptcy schedules.

## Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy.  New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977).  Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact."  Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Poller v. Columbia

Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).  The burden

is on the moving party.  Mt. Pleasant, 838 F.2d at 273.  After the moving party discharges this

burden, the nonmoving party must do more than show that there is some doubt as to the facts.

Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986).  Instead, the nonmoving party bears the burden of setting forth specific facts

showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light

most favorable to the party opposing the motion and give that party the benefit of any inferences

that logically can be drawn from those facts.  Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.

1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party.

Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

## Discussion

In its motion for summary judgment, the defendants assert that plaintiff as an individual

lacks standing to pursue this claim as only the bankruptcy trustee has the authority to do so.

Defendant next asserts that plaintiff's claim is barred by the doctrine of judicial estoppel.

## Standing

Only the trustee of a bankruptcy estate has the capacity to sue and be sued.  11 U.S.C. §

323(b).  When the trustee is appointed, a Chapter VII debtor no longer has standing to pursue a

cause of action which existed at the time the Chapter VII petition was filed.  Harris v. St. Louis

University, 114 B.R. 647, 648 (E.D.Mo. 1990).  See also Richardson v. United Parcel Service,

195 B.R. 737 (E.D.Mo. 1996).[2]  Accordingly, defendant asserts that as plaintiff attempted to pursue this matter, in her own name only, while a bankruptcy estate was pending and when she did not list this claim as an asset on her bankruptcy schedules, she does not have standing to pursue the claim.

Plaintiff asserts that she gave the necessary information to her bankruptcy attorney about the claim against defendant, and his failure to include the claim as an asset of her bankruptcy estate should not preclude her from proceeding with the claim here against this defendant. Plaintiff suggests that she has standing at the present time because on learning of the problem, she employed new counsel to reopen the bankruptcy estate and that has been accomplished, and a trustee appointed.  All that remains is for the court to substitute the trustee as the proper plaintiff in this case.

It is undisputed that a bankruptcy estate consists of any and all legal and equitable interests held by the debtor at the time the petition was filed.  This includes causes of action existing at the time of the commencement of the bankruptcy case.  11 U.S.C. § 541(a)(1).  Harris, 114 B.R. at 648.  Obviously, plaintiff accepts this standard as she has reopened her bankruptcy estate, had a trustee appointed and has petitioned this Court for the authority to substitute the trustee as the plaintiff in this case.  This Court must then decide whether the failure initially to list this claim as a claim of the estate precludes plaintiff from having a substitute trustee prosecute the claim.

---

[2]     Although the Court prefers not to cite to unpublished opinions, or bankruptcy opinions, it has found a number of decisions (both in the Eastern District of Missouri and among other district courts within the Eighth Circuit) that are unpublished but extremely helpful as to the issues present in the instant case.  The Court will cite to those decisions that were of assistance in making its determinations.

In <u>Harris</u>, plaintiff was discharged from her position with defendant on July 13, 1987. Two days later, she completed an EEOC intake questionnaire in which she asserted she was unlawfully discharged.   On October 6, 1987 plaintiff filed for relief under Chapter VII of the Bankruptcy Code, and on July 1, 1988 filed a formal charge with the EEOC alleging discrimination.  Her case against St. Louis University was filed July 13, 1989.  This Court dismissed plaintiff's claim pursuant to defendants' motion for lack of standing.  Plaintiff's argument was that she did not possess a cause of action at the time she filed her Chapter VII petition on October 6, 1987.  As her claim against St. Louis University was not listed on her Chapter VII schedule filed October 6, 1987, plaintiff lacked standing to bring a claim in court as late as July 13, 1989.  There was no request there to reopen the bankruptcy estate, and assert the claim that plaintiff allegedly had against the university.

In <u>Richardson</u> an employment discrimination claim was also omitted from the bankruptcy schedules.  The cause of action was filed there while the bankruptcy estate was pending and Richardson's response to the motion to dismiss for lack of standing was stayed in order that plaintiff could amend his bankruptcy petition to include his cause of action as an asset of the estate and to name the bankruptcy trustee as a party.  The court in <u>Richardson</u> determined that since the bankruptcy case was still open, plaintiff should not be precluded from having the proper party, the trustee, pursue his claim.  The court felt that creditors could be penalized if the court was to dismiss the claim on lack of standing or judicial estoppel.

Accordingly, it appears to the Court that the issue of judicial estoppel should be addressed as it is obvious that plaintiff, in her present posture, cannot pursue the claim without a trustee being substituted.  It is also obvious that plaintiff is prepared to cure the standing defect by

substituting the bankruptcy trustee as the proper party plaintiff.  See Richardson and Taylor v.

Comcast Cablevision of Arkansas, Inc., 252 F. Supp. 2d 793, 795 (E.D. Ark. 2003).  For a

discussion as to Missouri law, see Asmus v. Capital Region Family Practice, 115 S.W.3d 427

(Mo.App.W.D. 2003).

Judicial Estoppel

"The doctrine of judicial estoppel prevents a party from taking a position during litigation

which is contrary to one taken in a prior judicial or quasi-judicial proceeding.  The underlying

purpose is to protect the judicial process."  Amtrust, Inc. v. Larson, 388 F.3d 594, 600 (8th Cir.

2004).  See also Taylor v. Comcast, 252 F. Supp 2d at 796 and EEOC v. Apria Healthcare

Group, Inc., 222 F.R.D. 608, 612 (E.D. Mo. 2004).

Defendants maintain that plaintiff should be judicially estopped from asserting the present

claim in this Court when it was not listed as an asset of plaintiff's bankruptcy estate and the

plaintiff was discharged while the claim here was pending.  Defendants suggest that plaintiff was

aware of her claim as in her affidavit, she told her bankruptcy attorney about it.  Defendants assert

that plaintiff may not profit from this inconsistency and cannot rely on inadvertence or mistake or

on the negligence, if any, of her bankruptcy attorney.

Plaintiff counters stating that the error has been corrected with the reopening of the

bankruptcy estate and the request to substitute the trustee as the real party in interest and

accordingly, plaintiff has standing to continue this litigation.  Plaintiff asserts that neither she nor

her creditors be penalized for the mistake that was made or the improper action or lack of action

by her bankruptcy attorney.

Both parties have cited opinions from the Eighth Circuit as well as other circuits and

9

district court opinions, bankruptcy opinions and text authorities.  This Court will attempt to utilize the law in the Eighth Circuit and decisions from district courts in the Eighth Circuit insofar as may be possible.  The Court recognizes that there may be decisions in other jurisdictions that are inapposite to this memorandum opinion, but believe that the cases cited will be the better-reasoned.

In particular, the Court finds that the facts in Taylor v. Comcast, 252 F. Supp.2d 796 are more analogous to those in the present case than other citations given by the parties.

In Taylor, plaintiff filed a complaint under the Americans With Diabilities Act of 1990 alleging disability discrimination by defendant.  The action was filed November 16, 2001.

Taylor was discharged from his employment on April 4, 2000, a short few days after he had filed a charge of discrimination with EEOC on March 30, 2000.  He received a Right to Sue letter September 28, 2001.  Thus, his charge with the EEOC was pending from March 30, 2000 through September 28, 2001.

On August 1, 2001, again while the EEOC charge was pending, plaintiff filed a voluntary petition for Chapter VII bankruptcy.  His bankruptcy attorney was different from the one representing him in his discrimination claim.  Taylor failed to list the existence of the EEOC proceeding and the possibility of his litigation in his bankruptcy schedules.  Taylor was discharged in bankruptcy on November 15, 2001 and plaintiff avers that he did not receive notice of the discharge until after November 17, 2001 or a day or two after he filed the instant action.

On March 25, 2002 plaintiff was deposed and then disclosed that he had filed for bankruptcy.  A request for summary judgment requesting relief because of lack of standing and judicial estoppel was not filed until November 18, 2002.

10

Taylor requested the bankruptcy court to reopen the bankruptcy case on December 5, 2002, and it was reopened on February 6, 2003 and a trustee was appointed.  The trustee filed a motion to intervene in the discrimination action to assert the claim as the real party in interest. The court in Taylor determined that judicial estoppel should not be applied on the basis of the facts in that case.

The court adopted language from the Third Circuit in Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3rd Cir. 1996).  In so doing, the court in Taylor stated,

"[J]udicial estoppel is an 'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'  It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts.  Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to 'secure substantial equity.'" 81 F.3d at 365 (citations omitted).

In Taylor, the court further states that ordinarily judicial estoppel should be applied when there is intentional or deliberate manipulation which can be inferred from the record.  Judicial estoppel should not be invoked where the former position was the product of inadvertence or mistake.  Taylor, 252 F. Supp 2d at 796.

Defendants attempt to distinguish the facts in this case from those in Taylor.  For illustration, defendant suggests that in Taylor, the EEOC claim was filed to determine if the defendant there was not reasonably accommodating Taylor, whereas here, plaintiff is seeking money damages.  Defendants also assert that the plaintiff here filed her lawsuit while her

bankruptcy case was pending, and still did not amend her disclosures even though she did amend her schedules to add certain other assets.  Defendants suggest that the difference in <u>Taylor</u> was that the bankruptcy estate had been completed before suit was filed.  These modest differences are not compelling.  To be sure, Taylor stated that he was not seeking damages but wanted the EEOC to investigate his claim that defendant was not reasonably accommodating him.  That is still a claim for relief even though money, at that stage, was not the object.

The timing factor, again, is of little moment.  Taylor filed his discrimination lawsuit November 16, 2001.  He was discharged in bankruptcy on November 15, 2001 but did not receive notice of the discharge until after November 17, 2001.  Suit in the instant case was filed December 6, 2004 during the pendency of the bankruptcy estate which was closed shortly thereafter on January 25, 2005.

Obviously, claims were in existence at the time of the pendency of the bankruptcy estate in both cases, and again the precise timing is of little consequence.

On the other hand, the factual similarities in each case are substantial.  In each case, there were separate bankruptcy attorneys and litigation counsel.  Each plaintiff indicated a lack of knowledge of the legal system and relied on counsel for their protection.  There was a similar colloquy in the meeting of creditors in each case which did not reveal any discussion about pending claims.  Plaintiff was asked by his bankruptcy attorney, in <u>Taylor</u>, if he had a suit pending or a "right to sue."  Nonetheless, counsel did not advise Taylor to disclose the EEOC charge as an "administrative proceeding."  In the present case Turner stated that she advised her bankruptcy attorney about the pending bankruptcy proceeding.

In both cases, there was a quick attempt to cure the defect after litigation counsel became

aware of the bankruptcy claims.  Here, plaintiff's litigation counsel, Potashnick, stated that he first became aware of the bankruptcy problem when the instant motion to dismiss was filed February 28, 2005.  He urged plaintiff to obtain new bankruptcy counsel, and accordingly on motion, the bankruptcy estate was reopened May 5, 2005.  The parties in Taylor were unaware of the bankruptcy problem until plaintiff there was deposed on March 25, 2002.  Taylor and his counsel still did nothing until the defendant in that case filed request for summary judgment November 18, 2002.  Plaintiff then, for the first time, requested that the bankruptcy estate be reopened on December 5, 2002.

In Taylor, the bankruptcy trustee requested leave to intervene, to be substituted as the proper party plaintiff.  The same situation exists in the present case.  It would appear that if the facts in both cases would suggest the possibility of intentional fraud on behalf of the plaintiff in each case, the facts in Taylor are more egregious than those here.

Accordingly, the Court determines here, as was done in Taylor, that there is insufficient evidence of an intent on the part of the plaintiff to manipulate or deceive.

This Court also finds, as the court did in Taylor, that plaintiff relied on the advice of his attorneys to lead him through the intricacies of EEO law and bankruptcy law, and accordingly, he should not be held accountable.  Taylor at 799.[3]

As suggested earlier, where there is insufficient evidence of an intent on the part of the

---

[3]      The Court is well aware than in some situations, a contrary finding may be appropriate.  The cases involving different factual situations can be distinguished.  For illustration, in Nick v. Morgan's Foods, Inc., 270 F.3d 590 (8th Cir. 2001), the court in this district determined that a party may be held responsible for the actions of its counsel.  In that case, however, counsel was involved in an ADR conference and both counsel and the client were sanctioned because counsel blatantly violated the local rules of the court.  Those facts are substantially different from the actions of counsel in this case and in Taylor.

plaintiff to engage in a fraudulent practice by withholding assets on a bankruptcy schedule, the better practice is to allow the Trustee in bankruptcy to pursue the claim.  This was the case in Richardson, supra when a former colleague of this Court determined that the Trustee should be allowed to pursue the claim in order to avoid penalizing the creditors in the bankruptcy estate.

This Court's current colleague, Judge Shaw, reached a similar decision in EEOC v. Apria, 222 F.R.D. 608.  In EEOC a charge was brought against Apria Healthcare, the former employer of Dawn Ayers, charging that Apria did not reasonably accommodate Ayers because of her disability.  Ayers did not include the EEOC charge in a Chapter XIII bankruptcy petition but later amended the schedules to include the charge.

Although this was a case in which EEOC was the plaintiff as opposed to the bankrupt, the conclusion is still the same.  There was no evidence of any intent on the part of the bankrupt to practice a knowing misrepresentation or fraud for failure to list the EEOC charge in the bankruptcy proceedings.  EEOC at 613.

The case of U.S., ex rel Gebert v. Transport Admin. Servs., 260 F.3d 909 (8th Cir. 2001), which emanated also from a colleague of this Court, is relied on heavily by defendant.  In that case, the Geberts attempted to pursue a "qui tam" action against a former employer having failed to disclose the existence of that action in an earlier bankruptcy proceeding.  This Court's colleague, Judge Hamilton, dismissed the action on the basis of judicial estoppel.  The holding was sustained by the Eighth Circuit.

There are two reasons why Gebert can be distinguished from the authorities relied upon in this opinion.  The first and most important is that in Gebert there was direct evidence of an intent to defraud in that they clearly admitted that the decision not to list their qui tam action in their

14

bankruptcy schedules was to obtain a financial advantage in so doing.  The Court in <u>Gebert</u>

stated:

> "Instead, they (the Geberts) chose to erase all of their debts by declaring
> bankruptcy and to file the qui tam action only after their discharge in bankruptcy,
> presumably in an attempt to minimize the amount of money going to their creditors
> and to maximize the amount going to themselves."

<u>Gebert</u> at 919.

The Court in commenting on the failure to list the qui tam action in bankruptcy stated:

> "And it is the Geberts who stood to benefit from the inconsistent
> positions put forward in the two courts: the qui tam claim was not
> theirs for purposes of bankruptcy, but it was theirs for purposes of
> a later qui tam action."

<u>Gebert</u> at 918.

Second, in <u>Gebert</u>, the timing is of consequence.  In <u>Gebert</u> the bankrupt's petition was

filed in July 1994 and the Geberts were discharged in June 1996 and a final decree closed the

proceedings in April 1997.   The qui tam lawsuit was filed February 23, 1998 and the court in

<u>Gebert</u> found that at the time the bankruptcy petition was filed in July 1994, the Geberts

possessed all of the information necessary to file the qui tam claim.  This is certainly additional

evidence of an intent to defraud.

Defendants' cases cited from other jurisdictions can also be distinguished because they

contain facts from which the Court could easily find there was an actual intent to deceive.

Although this Court would prefer to have authorities from United States Court of Appeals

for the Eighth Circuit on which to base its decision, the better reasoned district court opinions in the Circuit seem more appropriate to follow.

Although plaintiff was aware that claims should be listed in a bankruptcy estate, she made her bankruptcy attorney aware of her claim. She relied on that attorney when the claim was not disclosed in bankruptcy. On learning of the defect, she immediately employed new bankruptcy counsel and placed herself in the position to have a bankruptcy trustee appointed as the proper plaintiff. This Court finds that whatever mistake was made was innocent in nature and the trustee in bankruptcy should be allowed to proceed as the plaintiff in this case following the general principles announced by all earlier decisions. This Court, too, is loath to apply judicial estoppel absent substantial evidence of fraud and deceit.[4]

Dated this __7th__ day of April, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] As noted earlier, the Court remains concerned about the claim of plaintiff on her amended bankruptcy schedules to declare the proceeds from the existing lawsuit exempt. Although it will be the job of the bankruptcy judge, this Court believes that some of plaintiff's claims may be exempt and some not. Accordingly, if plaintiff prevails, the unsecured creditors may still have a remedy.